**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CHANEL PYATT,

                Plaintiff,

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social
Security,

                Defendant.

No. 17-cv-2809 (EGS)

<u>**MEMORANDUM OPINION AND ORDER**</u>

## I.   Introduction

Plaintiff Chanel Pyatt ("Ms. Pyatt") seeks reversal of the final decision by Defendant Kilolo Kijakazi[1] in her official capacity as Commissioner of Social Security (the "Commissioner" or "Defendant") denying her claim for supplemental security income payments.[2] Compl., ECF No. 1 at 8. Specifically, Ms. Pyatt is seeking a remand order that is for an award of benefits, or, in the alternative, for a rehearing. *Id.* Pending before the Court are Ms. Pyatt's Motion for Judgement of Reversal ("Pl.'s Mot."), *see* ECF No. 13; and the Commissioner's Motion for

---

[1] Kilolo Kijakazi became the Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi has been substituted for former Acting Commissioner Nancy A. Berryhill as the Defendant in this action.

[2] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

Judgment of Affirmance ("Def.'s Mot."), *see* ECF No. 14. Upon careful consideration of the motions, oppositions, and Ms. Pyatt's reply and notice of supplemental authority, the administrative record, and the relevant case law, the Court **GRANTS** Ms. Pyatt's motion to reverse the Commissioner's final decision, *see* ECF No. 13; and **DENIES** the Commissioner's motion to affirm her final decision, *see* ECF No. 14. The Court **DENIES** Ms. Pyatt's request for an award of benefits and **REMANDS** to the Commissioner for reconsideration.

## II.  Background

Ms. Pyatt is a resident of the District of Columbia. *See* Compl., ECF No. 1 ¶ 1. She has been diagnosed with various mental-health disorders, including bipolar one disorder, cocaine dependence, alcohol dependence, bipolar disorder with psychotic features, and depressive disorder. Administrative Record ("A.R."), ECF No. 11-2 at 15. On March 7, 2012, Ms. Pyatt filed an application for supplemental security income ("SSI") payments under Title XVI of the Social Security Act. A.R., ECF No. 11-2 at 12. This application was denied, and Ms. Pyatt now seeks reversal of the decision. *See* Compl., ECF No. 1 at 8. Before discussing the factual background in this case, the Court will set forth

the relevant legal framework.

### A. Legal Framework

#### 1. Defining Disability and Qualifying for Benefits

To qualify for Social Security under Title XVI of the Social Security Act, Ms. Pyatt must first establish that she is "disabled." *See* 42 U.S.C. § 423(a)(1)(E). Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A); *see id.* § 1382c(a)(3)(A). Ms. Pyatt is disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

#### 2. Sequential Evaluation Process

The Administrative Law Judge ("ALJ") must conduct a five-step sequential evaluation to assess a claimant's alleged disability. *See* 20 C.F.R. §§ 404.1520, 416.920 (2012). The claimant bears the burden of proof at the first four steps, and the burden shifts to the Commissioner at step five. *See Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).

First, the ALJ must find that the claimant is not presently

engaged in "substantial gainful" work. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, they must find that the claimant has a "severe impairment" that "significantly limits" her ability to do basic work activities. *Id.* §§ 404.1520(c), 416.920(c). Third, if the ALJ finds that the claimant suffers from an impairment that meets one of those listed in 20 C.F.R. § 404, Subpart P, Appendix 1, she is deemed disabled, and the inquiry ends. *Id.* §§ 404.1520(d), 416.920(d). If the claimant's impairment does not meet one of those listed in the Appendix, the ALJ determines her Residual Functional Capacity ("RFC") based upon all the evidence of record. *Id.* §§ 404.1520(e), 416.920€. Once a determination of the claimant's RFC has been made, the ALJ moves to step four to determine whether her RFC allows her to do work that she used to do, which is called "past relevant work." *Id.* §§ 404.1520(f), 416.920(f). If the claimant's RFC does not allow her to do past relevant work, the ALJ moves on to step five, where they determine whether the claimant's RFC allows her to adjust to any other work, given her age, education, and work experience. *Id.* §§ 404.1520(g), 416.920(g). If the ALJ finds that the claimant can either perform past relevant work (at step four) or that she can adjust to any other work (at step five), they will find that the claimant is not disabled. *Id.*

### 3. Drug Addiction or Alcoholism as a "Contributing Factor Material" to the Individual's Disability

An individual with a disability is ineligible for SSI benefits if drug addiction or alcoholism (DAA)[3] is a "contributing factor material" to the individual's disability. 42 U.S.C. § 423(d)(2)(C). DAA is "material" "if the claimant *would not meet the definition of disability if they were not using drugs or alcohol*." SSR 13-2p, 78 Fed. Reg. at 11,941. The ALJ must evaluate the extent to which the claimant's mental and physical limitations would remain absent substance use; if the remaining limitations would not be disabling, the substance use disorder is a contributing factor material to the determination of disability such that the claimant is not considered disabled. 20 C.F.R § 416.935.

### B. Factual Background

Ms. Pyatt has been diagnosed with various mental-health disorders, including bipolar one disorder, cocaine dependence, alcohol dependence, bipolar disorder with psychotic features, and depressive disorder. A.R., ECF No. 11-2 at 15. She has suffered sexual abuse, rape, and domestic violence, including as a child. Pl.'s Mot., ECF No. 13 at 5-6. She has struggled to find an

---

[3] SSA indicates that "drug addiction" and "alcoholism" are medically outdated terms, but it uses the words because they appear in the statute. SSR 13-2p, 78 Fed. Reg. 11,939 (Feb. 20, 2013).

appropriate psychiatric care regime and has used drugs and alcohol for more than three decades, with periods of sobriety. *Id.* at 7–8. Ms. Pyatt has been hospitalized at least fifteen times. *Id.* at 8. Her efforts to work, including through attempting her GED, pursuing vocational rehabilitation, and holding temporary positions, have been largely unsuccessful. *Id.* at 10–11.

Dr. Joel Cohen is a psychiatrist who treated Ms. Pyatt, first at Psychiatric Center Chartered in 2003 or 2004 and then at Community Connections from 2010 through 2014. *Id.* at 8. Dr. Cohen's notes from his treatment of Ms. Pyatt (which Ms. Pyatt relies on as Dr. Cohen's medical opinion) expand on Ms. Pyatt's difficulties. *See, e.g.*, A.R., ECF No. 11-12 at 136 (Dr. Cohen recorded on June 9, 2010 that Ms. Pyatt came to him "with acute depressive symptoms and self destructive thoughts"); *id.* at 54 (on February 29, 2012, Dr. Cohen noted that "[s]he has been experiencing abuse and has had difficulty dealing with the trauma, turn (sic) to alcohol and on February 22nd had a FD-12 at CPEP overnight"); *id.* at 24 (in his treatment notes on August 31, 2012, Dr. Cohen recorded: "She is struggling with no income, though has been trying to do some part-time work, which has been difficult given her many symptoms." He added: "She is reporting that she is clean and sober, does take her medication appropriately, but is presenting with increased depressive

symptoms including a good deal of irritability, low frustration tolerance, difficulties with concentration and focus and intensified trama [sic] symptoms."). Ms. Pyatt's medications have changed several times, which she alleges makes it hard for her to keep track of her medications. A.R., ECF No. 11-2 at 51, 56. Some medications have made her feel worse, and have had side effects such as making her break out in hives, giving her nightmares, and making her confused, sleepy and moody. *Id.* at 52, 56-57, 77. Ms. Pyatt also takes medicine for gout, heart palpitations, and high blood pressure. *Id.* at 61.

As to the link between substance abuse and Ms. Pyatt's mental disorders, the record establishes the following: Following her sexual abuse, Ms. Pyatt began experiencing depressive symptoms at the age of thirteen before she ever started abusing drugs and alcohol. *Id.* at 47. She had an eighteen-month period of abstinence during the 1990s in which she continued to experience bipolar and anxiety symptoms. A.R., ECF No. 11-2 at 57-59. She also had a psychiatric hospitalization in March 2012 after she had been sober for over one month. *Id.* at 47. Her symptoms improved when she was off drugs and alcohol and taking her medication, as periods in February 2012 and May 2013 demonstrate. *Id.* at 16, 26-27; *see also id.* at 84. Her symptoms worsened when she used substances and did not take her medication. *Id.* at 16, 27-28. Sometimes Ms. Pyatt drinks because

she is feeling bad, and the alcohol makes her feel better. *Id.*
at 63.

### C. Procedural History

On March 7, 2012, Ms. Pyatt filed an application for SSI
payments under Title XVI of the Social Security Act. A.R., ECF
No. 11-2 at 12. Ms. Pyatt alleges disability beginning July 1,
2007. *Id.* On her disability report, Ms. Pyatt alleged that
bipolar disorder and depression limited her ability to work. *See*
Compl., ECF No. 1 ¶ 31. Her application was denied both
initially and upon reconsideration. A.R., ECF No. 11-2 at 9. An
ALJ then denied the claim in a decision dated October 2, 2014.
*Id.* Following a remand from the Appeals Council, which asked for
an analysis of whether drug addiction and alcoholism are
contributing factors material to the determination of
disability, an ALJ, F.H. Ayer ("ALJ Ayer") again reviewed the
case. *Id.* On September 8, 2016, ALJ Ayer held a hearing at which
Ms. Pyatt, Ms. Candace Loeffler, and a Vocational Expert ("VE"),
Mr. Mark Heckman, testified. *Id.* ALJ Ayer issued a decision
denying benefits on January 11, 2017. *Id.* at 35.

Although ALJ Ayer found that Ms. Pyatt had a disability, he
determined that drug addiction and alcoholism were a "material
factor contributing" to the finding of disability. *Id.* at 19, 34.
Specifically, ALJ Ayer determined that in the absence of drugs
and alcohol, Ms. Pyatt could "perform work that does not require

performing more than simple 1-4 step, routine, repetitive tasks in a work environment with only occasional contact with coworkers and supervisors and no general public contact." *Id.* at 20. ALJ Ayer did not assign any weight to Dr. Cohen's statements in either opinion. *See* Pl.'s Mot., ECF No. 13 at 13. The Appeals Council denied review on October 13, 2017, rendering ALJ Ayer's decision the final decision of the Commissioner. *Id.* at 2.

On June 18, 2018, Ms. Pyatt filed a Motion for Judgment of Reversal. *See* ECF No. 13. Ms. Pyatt's action raises two issues: (1) whether ALJ Ayer properly evaluated the medical opinion evidence; and (2) whether ALJ Ayer properly determined that Ms. Ayer would not be disabled if she stopped her substance abuse. On August 2, 2018, Defendant filed a Motion for Judgment of Affirmance, *see* ECF No. 14; and a Memorandum in Opposition ("Def.'s Opp'n"), ECF No. 15. Ms. Pyatt replied on August 24, 2018, Ms. Pyatt. *See* Pl.'s Reply, ECF No. 16. The motions are fully briefed and ready for adjudication.

## III. Standard of Review

Judicial review in this Court is statutorily limited to whether the Commissioner, acting through the ALJ, correctly applied the relevant law, and whether there is substantial evidence to support the Commissioner's final decision that Ms. Pyatt was not disabled. *See* 42 U.S.C. § 405(g); *Butler*, 353 F. 3d at 999. "Substantial evidence" is "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Butler*, 353 F.3d at 999 (quoting *Florida Mun. Power Agency v. F.E.R.C.*, 315 F.3d 362, 366 (D.C. Cir. 2003) (internal quotation omitted). A court's review of administrative decisions for substantial evidence requires "careful scrutiny of the entire record." *Brown v. Bowen*, 794 F.2d 703, 705 (D.C. Cir. 1986). But a court "may not reweigh the evidence presented to it . . . [or] replace the [Commissioner's] judgment concerning the weight and validity of the evidence with its own. *Davis v. Heckler*, 566 F. Supp. 1193, 1195 (D.D.C. 1983).

## IV. Discussion

Ms. Pyatt argues that legal errors tainted ALJ Ayer's conclusion that DAA was material to her disability. First, Ms. Pyatt argues that ALJ Ayer did not properly consider the view of Dr. Cohen, her treating physician, under 20 C.F.R. § 416.927(c). Pl.'s Mot., ECF No. 13, at 14. Second, Ms. Pyatt argues that ALJ Ayer did not properly disentangle her drug and alcohol use and her disabling limitations concerning periods of sobriety and hospitalization. *Id.* at 18 (citing SSR 13-2p, 78 Fed. Reg. 11,939). The Court considers each of these arguments in turn.

## A. ALJ Ayer Did Not Properly Consider Dr. Cohen's Opinion

Ms. Pyatt argues ALJ Ayer erred in not considering what she presents as Dr. Cohen's opinion that she would have a disability even if she stopped her drug and alcohol use. Pl.'s Mot., ECF No. 13 at 18. She contends that ALJ Ayer should have given Dr. Cohen's opinion controlling weight, or at least should have stated his reasons for giving less or no weight to the opinion. *Id.* The Commissioner makes two principal counterarguments. First, the Commissioner argues that Ms. Pyatt does not cite to a medical opinion. Def.'s Opp'n, ECF No. 15 at 7. Second, the Commissioner argues that this Court should not remand even if Ms. Pyatt cites to a medical opinion, because Dr. Cohen's medical opinion only addressed whether Ms. Pyatt would have symptoms, not whether Ms. Pyatt would have a disability, and because substantial evidence of materiality outweighed Dr. Cohen's medical opinion to the contrary. *Id.* at 8. At most, the Commissioner contends, "Ms. Pyatt cites to treatment notes that, according to Ms. Pyatt, indicate that some of her symptoms persisted during periods of abstinence." *Id.* The Commissioner does not contest that Dr. Cohen was Ms. Pyatt's "longstanding" treating physician. Pl.'s Mot., ECF No. 13, at 16. Ms. Pyatt replies that the Commissioner's argument that Dr. Cohen's statements do not qualify as medical opinions focuses overly on their classification as treatment notes rather than the relevant

definition. Pl.'s Reply, ECF No. 16 at 8. The Court agrees with Ms. Pyatt and concludes that she properly cites to a medical opinion that ALJ Ayer should have considered.

Ms. Pyatt's argument rests on Dr. Cohen's "assessment in 2012 that – even when Ms. Pyatt was sober and complying with her treatment regimen – her symptoms persisted." Pl.'s Mot., ECF No. 13 at 17. Dr. Cohen's full statement in the Record is as follows: "She is reporting that she is clean and sober, does take her medication appropriately, but is presenting with increased depressive symptoms including a good deal of irritability, low frustration tolerance, difficulties with concentration and focus and intensified trama (sic) symptoms." A.R., ECF No. 11-12 at 24. Ms. Pyatt further asserts that Dr. Cohen "found that Ms. Pyatt's trauma symptoms were causing her to abuse substances, not the other way around." Pl.'s Mot., ECF No. 13 at 17. Dr. Cohen's statement in the Record provides: "She has been experiencing abuse and has had difficulty dealing with the trauma, turn (sic) to alcohol and on February 22nd had a FD-12 at CPEP overnight." A.R., ECF No. 11-12 at 54. Further, "[s]he does use her substances as medication." *Id.* at 136.[4] Lastly, Ms. Pyatt asserts that Dr. Cohen "observed that Ms.

---

[4] Ms. Pyatt also cites to A.R., ECF No. 11-16 at 61, but this page does not contain a statement of Dr. Cohen's and does not assert that Ms. Pyatt's trauma symptoms caused her to abuse substances.

Pyatt did not have the capacity to better manage her trauma symptoms." Pl.'s Mot., ECF No. 13 at 17. Dr. Cohen's statement in the Record is as follows: "She obviously does have poor coping skills." A.R., ECF No. 16 at 67. Ms. Pyatt adds that Dr. Cohen's medical opinion is "well-supported and not contradicted by substantial evidence." Pl.'s Mot., ECF No. 13 at 17.

Federal regulations instruct the Social Security Administration ("SSA") to "evaluate every medical opinion" in considering a claim for SSI benefits. 20 C.F.R. § 416.927(c).[5] Medical opinions are statements that reflect "judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis." *Id.* § 416.927(a)(1).

Facially, the Commissioner's argument has intuitive appeal: Dr. Cohen's statements are presented in his treatment notes, rather than an explicit diagnosis directly conveyed to the patient. However, the Commissioner provides no case law that suggests treatment notes cannot be considered as medical judgments, nor does the Commissioner engage substantively with the contents of the notes, and whether they amount to "judgments about the nature and severity of [Ms. Pyatt's] impairment(s),

---

[5] This regulation only covers claims, like this one, filed before March 27, 2017. A superseding regulation governs claims filed after that date. 20 C.F.R. § 416.920(c).

including [Ms. Pyatt's] symptoms, diagnosis and prognosis." *Id.*
§ 416.927(a)(1). The Court concludes that they do. First, Dr.
Cohen's statements address Ms. Pyatt's "increased depressive"
symptoms, including "a good deal of irritability, low
frustration tolerance, difficulties with concentration and focus
and intensified trama (sic) symptoms." A.R., ECF No. 11-12 at
24. Second, Dr. Cohen's statements that Ms. Pyatt "turn[ed]" to
alcohol in dealing with her trauma resemble a diagnosis, even if
not explicitly conveyed to Ms. Pyatt in the moment. *Id.* at 136.
Third, Dr. Cohen's statement that Ms. Pyatt has limited coping
skills resembles a prognosis. *See* A.R., ECF No. 11-15 at 67. Dr.
Cohen's statements plainly appear to fit the definition of a
"medical opinion" as stated in the relevant regulation, which
defines medical opinion "functionally." 20 C.F.R. § 416.927(c).
As Ms. Pyatt notes, "there is no 'treatment note' exception to
the definition of 'medical opinion.'" Pl.'s Reply, ECF No. 16 at
9. In fact, persuasive authority cuts the opposite way. In
*Furister*, the court rejected an argument that the ALJ did not
have to consider a medical opinion that occurred in a treatment
note. *Furister v. Comm'r of Soc. Sec.*, No. 16-10454, 2017 U.S.
Dist. LEXIS 17447, at *29 (E.D. Mich. Feb. 8, 2017).

The Commissioner argues that "[t]o the extent that Dr.
Cohen's notes could be construed as an opinion supporting
disability, ALJ Ayer cited to substantial evidence undermining

the opinion." Def.'s Mot., ECF No. 2 at 11. However, viewed differently, Dr. Cohen's notes could themselves undermine ALJ Ayer's opinion. Moreover, this argument mistakes the relevant standard, which requires that ALJs must "evaluate *every* medical opinion" in considering a claim for SSI benefits. 20 C.F.R. § 416.927(c) (emphasis added). While the evidence cited by ALJ Ayer may in comparison undercut the contents of the treatment notes, there is no evidence to suggest that Dr. Cohen's opinion was considered at all. It is also irrelevant whether ALJ Ayer "agreed that Plaintiff would still experience symptoms if she stopped abusing substances." Def.'s Mot., ECF No. 2 at 11. First, Ms. Pyatt's argument is that Dr. Cohen's notes state she would have a *disability*, not just experience symptoms, if she stopped abusing substances. Second, the relevant legal standard requires that ALJ Ayer have considered every medical opinion, particularly that of a treating physician like Dr. Cohen, whose medical opinion "[g]enerally" receives "more weight" and may even receive "controlling weight." *Id.* § 416.927(c)(2). If, even without considering Dr. Cohen's opinion, ALJ Ayer agreed that Ms. Pyatt would experience symptoms without abusing substances, it is possible that Dr. Cohen's opinion could persuade ALJ Ayer that Ms. Pyatt would continue to have a disability if she stopped abusing substances.

The Court concludes that Dr. Cohen's treatment notes are "medical opinions" that must be considered, and remands to the Commissioner to reconsider Ms. Pyatt's disability anew. On remand, ALJ Ayer should explain what weight he attaches to Dr. Cohen's conclusions, or if he attaches none, his reasons therefor. *See Simms v. Sullivan*, 877 F.2d 1047, 1053 (D.C. Cir. 1989).

## B. ALJ Ayer Erred in Not Considering Periods of Abstinence

Ms. Pyatt argues that ALJ Ayer "violated the SSA's rules regarding how to analyze the impact of the substance use disorder on her mental health impairments," by "speculat[ing] that the cessation of such use would allow Ms. Pyatt to work, contrary to an abundance of evidence in the Record . . .." Pl.'s Mot., ECF No. 13 at 18. Ms. Pyatt points to four specific instances. First, she asserts that ALJ Ayer "incorrectly framed the question as whether drug abuse or alcoholism contributed to Ms. Pyatt's limitations and speculated as to whether substance use fostered noncompliance with Ms. Pyatt's medication regimen." *Id.* at 19. Next, she argues that ALJ Ayer did not properly analyze her periods of sobriety. *Id.* at 21. Third, she contends that "the ALJ further erred by failing to properly consider the sheer volume of [her] [] hospitalizations." *Id.* at 22. Finally, she reiterates that ALJ Ayer failed to consider Dr. Cohen's opinion. The Court considers each of these arguments in turn,

except for the last one as to Dr. Cohen, which has already been discussed *supra.*

First, Ms. Pyatt argues that ALJ Ayer violated SSR 13-2 by finding that her drug addiction "contributed to" her disability, instead of asking whether substance abuse "was the only barrier between her current disability and her ability to work." Pl.'s Mot., ECF No 13 at 18-19. The Commissioner responds that this argument is semantical, and that ALJ Ayer properly followed the sequential evaluation necessary to find that if Ms. Pyatt stopped her substance abuse, her impairments would not meet the requirements for presumptive disability. Def.'s Mot., ECF No. 14 at 14. The Court agrees with the Commissioner.

SSR 13-2p requires evidence that a claimant, already found to have a disability, would not have a disability in the absence of DAA. "To support a finding that *DAA* is material, we must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of *DAA.*" SSR 13-2p, 78 Fed. Reg. at 11,943. Conversely: "We will find that *DAA* is not material to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of non-disability in the absence of *DAA.*" *Id.* at 11,944.

The problem with Ms. Pyatt's argument is that she cherry-picks a few sentences from ALJ Ayer's detailed analysis, *see* A.R., ECF No. 11-2 at 19-21; but overlooks his reasoned conclusion that "[i]f the claimant stopped the substance abuse, the remaining limitations would not meet or medically equal the criteria of listings," *id.* at 19. As the Commissioner points out, ALJ Ayer "provided numerous well-supported reasons for his conclusion that if Ms. Pyatt stopped abusing drugs and alcohol, she would not be disabled." Def.'s Opp'n, ECF No. 15, at 11. For instance, ALJ Ayer finds that "once Ms. Pyatt ceased her substance abuse and began taking medications, her symptoms were no longer disabling." *Id.* ALJ Ayer highlights evidence from February 2012 and May 2013 showing that Ms. Pyatt's condition improved when not using drugs or alcohol and when taking her medications. *See* A.R., ECF No. 11-2 at 26-27. In contrast, her disability manifested when she was using drugs or alcohol and not taking her medications. *See id.* at 25-26. Ms. Pyatt does not show that SSR 13-2p prohibited ALJ Ayer from considering evidence of improvement after hospitalization and medication, even if the regulation cautions against it.

This evidence, along with other evidence in the decision, is substantial because it offers "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" that Ms. Pyatt would not have a disability if she

stopped using drugs or alcohol. 20 C.F.R. § 404.901. Substantial evidence "entails a degree of deference to the Commissioner's decision," and the Court "may not reweigh the evidence and 'replace the [Commissioner]'s judgment regarding the weight and validity of the evidence with its own.'" *Jackson v. Barnhart*, 271 F. Supp. 2d 30, 33-34 (D.D.C. 2002) (citing *Davis v. Heckler*, 566 F. Supp. 1193, 1195 (D.D.C. 1983)).

Ms. Pyatt's argument from case law that substantial evidence does not support ALJ Ayer's conclusion relies heavily on *Murray v. Colvin*, No: 1:16-CV-00181, 2017 WL 1289588 (W.D.N.Y. April 6, 2017). In *Murray*, an ALJ determined that the claimant had a disability, but denied him benefits because DAA was a contributing factor material to the disability. 2017 WL 1289588, at *1-2. The court determined that SSR 13-2p "is quite restrictive and requires that the record conclusively establish that, in the absence of DAA, plaintiff's condition would improve *to the point of nondisability*." *Id.* at *3. The court then conducted a "careful review of the record" and found "no evidence" supporting the ALJ's conclusion. *Id.* at *4. Additionally, a treating physician whose medical opinion received "significant" weight stated on the record that the claimant's limitations in the absence of DAA were "unknown." *Id.* at *2, *4. Here, ALJ Ayer considered evidence from a multitude of sources, including function reports from nonmedical sources,

19

medical opinions (but incorrectly omitting Dr. Cohen's), medical
and personal history, hospitalization records and hearing
testimony, before concluding that Ms. Pyatt would not have a
disability absent substance abuse. *See* A.R., ECF No. 11-2 at 22-
33. Consequently, *Murray* does not demonstrate that ALJ Ayer's
decision in this case lacked substantial evidence.

Ms. Pyatt also argues that ALJ Ayer "failed to acknowledge
(as required by SSR 13-2p) that she has had periods of
abstinence during which she exhibited psychiatric symptoms."
Pl.'s Mot., ECF No. 13 at 21. Ms. Pyatt points to an eighteen-
month period of sobriety in the 1990s in which she experienced
bipolar and anxiety symptoms. *Id.* The Commissioner responds that
"the question is not whether Ms. Pyatt experienced symptoms, but
whether she had disabling limitations." Def.'s Opp'n, ECF No.
15, at 12. The Court agrees with Ms. Pyatt that ALJ Ayer
improperly failed to consider her behavior during periods of
abstinence.

SSR 13-2p indicates how SSA evaluates periods of
abstinence, hospitalization, and treatment. However, SSA is
"unable to provide exact guidance on the length and number of
periods of abstinence to demonstrate whether *DAA* is material in
every case." SSR 13-2p, 78 Fed. Reg. at 11,945. A "single,
continuous period of abstinence" may be enough to enable ALJs to
make a judgement about materiality. *Id.* "If, however, a claimant

is abstinent and remains disabled throughout a continuous period of at least 12 months, DAA is not material even if the claimant's impairment(s) is gradually improving." *Id.* at n.26.

The record shows that Ms. Pyatt continued to experience psychiatric symptoms even during periods of abstinence, including an 18-month long period of abstinence. A.R., ECF No. 11-2 at 58-59; ECF No. 11-9 at 77. Admittedly, this period was decades prior in the late 1990s, and it is possible Ms. Pyatt's symptoms did not rise to the level of a disability, but ALJ Ayer did not consider that period at all. The Commissioner argues that "the question is not whether Plaintiff experienced symptoms, but whether she had disabling limitations," Def.'s Mot., ECF No. 14 at 14; but the Court cannot fathom how it is possible to properly determine the latter (Plaintiff's limitations without substance abuse) without even considering the former (Plaintiff's symptoms in the absence of substance abuse). The Commissioner is incorrect that the "burden is on Plaintiff to demonstrate limitations beyond those found by the ALJ." *Id.* Rather, Ms. Pyatt "has the burden of proving disability throughout the sequential evaluation process." SSR 13-2p, 78 Fed. Reg. at 11,941. At this stage, post an ALJ's decision, "the party seeking reversal normally must explain why the erroneous ruling caused harm," *Nelson*, 131 F.3d at 1236; which Ms. Pyatt adequately does here by arguing that in

21

erroneously overlooking evidence as to abstinent periods, ALJ Ayer deprived her of benefits.

Ms. Pyatt further argues that ALJ Ayer's analysis "conflicts with the SSA's instructions that ALJs be cautious when evaluating evidence demonstrating that the claimant's co-occurring mental disorder(s) improved when he or she received treatment in a highly structured setting." Pl.'s Mot., ECF No. 13 at 21. However, as Defendant observes, "SSR 13-2p does not prohibit an ALJ from considering improvement post-hospitalization." Def.'s Opp'n, ECF No. 15, at 12. SSR 13-2p states that SSA "*may* find that a claimant's co-occurring mental disorder(s) is still disabling even if increased support or a highly structured setting reduce the overt symptoms and signs of the disorder." SSR 13-2p, 78 Fed. Reg. at 11,939 (emphasis added). However, SSR 13-2p did not *require* ALJ Ayer to find that the mental disorder was still disabling. While ALJ Ayer could have been more cautious in his analysis to avoid focusing on the "brief moments" where Ms. Pyatt's symptoms "may [have] appear[ed] to improve because of the structure and support provided in a highly structured treatment setting," *id.* at 11,945; the Court cannot "replace the [Commissioner's] judgment concerning the weight and validity of the evidence with its own." *Heckler*, 566 F. Supp. at 1195.

Ms. Pyatt also argues that ALJ Ayer "erred by failing to properly consider the sheer volume of Ms. Pyatt hospitalizations." Pl.'s Mot., ECF No. 13, at 22. SSR 13-2p indicates that "a record of multiple hospitalizations, emergency department visits, or other treatment for the co-occurring mental disorder—with or without treatment for *DAA*—is an indication that *DAA* may not be material even if the claimant is discharged in improved condition after each intervention." SSR 13-2p, 78 Fed. Reg. at 11,939. However, as above, SSR 13-2p does not *mandate* that a record of multiple hospitalizations is an indication that DAA is not material.

The Court concludes that Ms. Pyatt fails to show that ALJ Ayer went beyond his authority in evaluating Ms. Pyatt's hospitalizations or treatment, except in ignoring periods of abstinence.

### C. Remand Rather Than an Award of Benefits is the Appropriate Remedy

In her request for relief, Ms. Pyatt asks this Court to award her benefits rather than to remand for further proceedings. Pl.'s Mot., ECF No. 13 at 23. In support, Ms. Pyatt maintains that the record in her case has been thoroughly developed and a "hearing would merely "function to delay the [inevitable] award of benefits." *Id.* The Court disagrees.

Courts award benefits when the ALJ could not reasonably decide against the claimant on remand. *See Ademakinwa v. Astrue*, 696 F. Supp. 2d 107, 112 (D.D.C. 2010); *Lockard v. Apfel*, 175 F. Supp. 2d 28, 33–34 (D.D.C. 2001). In *Ademakinwa*, the defendant conceded that substantial evidence did not support the ALJ's decision, nor did the defendant "controvert" the plaintiff's evidence. 696 F. Supp. 2d at 112. The court awarded benefits because the defendant "suggested no basis" for it to prevail on remand. *Id*. In *Lockard*, the ALJ "irrationally" disregarded a treating physician's diagnosis. 175 F. Supp. 2d at 33. The district court awarded benefits because it would have been "virtually impossible" for the ALJ to find against the plaintiff if the ALJ properly accepted the treating physician's testimony. *Id.* at 34.

On the other hand, courts identifying errors in an ALJ's assessment of a treating physician's medical opinion have remanded for the ALJ to consider the opinion. *See Simms*, 877 F.2d at 1052–53. In *Simms*, the claimant argued that the ALJ had not considered a treating physician's opinion that the claimant experienced pain. 877 F.2d at 1052. This opinion "could have affected" the ALJ's decision to discount the claimant's own testimony concerning his pain. *Id.* at 1053. The United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") instructed the ALJ to explain the weight he attaches

to the treating physician's opinion or his reasons for not attaching any weight. *Id.* In *Jackson*, the ALJ did not cite to the records of a treating physician. 271 F. Supp. 2d at 36. The oversight was "troubling" because the treating physician's records indicated that the plaintiff had an impairment listed as "*presumptively disabling*." *Id.* The court did not award benefits or even instruct the ALJ to grant controlling weight to this physician on remand. *Id.* Instead, the court instructed the ALJ to "reweigh the evidence" and, if not giving controlling weight to the medical opinion, to "explain the reasons for this decision." *Id.*

In this case, ALJ Ayer could reasonably find against Ms. Pyatt on remand. The Commissioner has not conceded that ALJ Ayer's decision lacked substantial evidence in support, and in fact contests the evidence in Ms. Pyatt's favor, unlike in *Ademakinwa*, 696 F. Supp. 2d at 112. *Lockard* provides more support for Ms. Pyatt because that case involved an ALJ's disregard for a treating physician's testimony. *See* 175 F. Supp. 2d at 33–34. However, the court considered it "virtually impossible" for the ALJ to find against the plaintiff after considering the treating physician's testimony. *Id.* Here, however, Ms. Pyatt has not shown that Dr. Cohen's opinion would make it "virtually impossible" for ALJ Ayer to rule against her. Instead, this case is most similar to *Simms*, in which the

treating physician's opinion "could have affected" ALJ Ayer's decision. 877 F.2d at 1053. Even in *Jackson*, in which the ALJ's oversight of a treating physician's opinion was "troubling," the court did not award benefits but instructed the ALJ to reweigh the evidence. *See* 271 F. Supp. 2d at 36. Because ALJ Ayer on remand could properly consider Dr. Cohen's medical opinion and decide whether to give it controlling weight, the Court deems it appropriate to remand rather than to award benefits. *Cf. Heckler*, 566 F. Supp. at 1195 (the court may not replace the [Commissioner's] judgment concerning the weight and validity of the evidence with its own).

The supplemental authority that Ms. Pyatt submitted to this Court on April 6, 2021 does not change the Court's conclusion. *See* Pl.'s Notice Suppl. Authority, ECF No. 17, at 1–2 (citing *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 386 (4th Cir. 2021)). In *Dowling*, the plaintiff sought Social Security Disability Insurance, not Supplemental Security Income. Nevertheless, the underlying regulations concerning a treating physician's medical opinion are identical.[6] *Compare* 20 C.F.R. § 404.1527 (SSDI) *with* 20 C.F.R. § 416.927 (SSI). In *Dowling*, the United States Court of Appeals for the Fourth Circuit ("Fourth

---

[6] As with the regulations governing this case, superseding regulations govern claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c.

Circuit") agreed with the ALJ that the treating physician's medical opinion did not merit controlling weight. 986 F.3d at 386. However, the court faulted the ALJ for not considering each of the factors for assigning weight to a medical opinion. *Id.; see also* 20 C.F.R. § 404.1527(c). The court remanded because greater weight for the opinion reasonably could have altered the ALJ's conclusion. 986 F.3d at 386. Without the ALJ's adequate explanation for the weight he assigned to the treating physician's medical opinion, the district court could not review the SSA's determination. *Id.* A similar rationale as to Dr. Cohen's opinion, and the periods of abstinence, applies here. For these reasons, the Court concludes that the case should be remanded to the Commissioner.

## V.    Conclusion and Order

For the reasons set forth above, it is hereby

**ORDERED** that Ms. Pyatt's Motion for Judgment of Reversal, *see* ECF No. 13, is **GRANTED**; and it is further

**ORDERED** that the Commissioner's Motion for Judgment of Affirmance, *see* ECF No. 14, is **DENIED**. This case is **HEREBY REMANDED** to the Commissioner for a decision consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

**Signed:**    **Emmet G. Sullivan**
            **United States District Judge**
            **July 6, 2022**